CRIST and HALDEMAN *against* MATHIAS GARNER and SUSANNA BRINDLE, executors of BRINDLE.

IN ERROR.

C built for B a house, in the summer of 1813, and afterwards, on the 9th October, 1813, they entered into articles of agreement, by which B covenanted to convey to C, the land on which the house had been built, for £3,000: £2,000 to be paid about the middle of May then next, and £100 on the 20th May in every year, until the whole purchase money should be paid. B died in the spring of 1814, not having executed a deed, but by his will, he directed the contract to be carried into execution by his executors. G and W, his widow, the executors of his will, on the 7th of June, 1814, executed a deed to C, and signed a receipt thereon for the consideration of £3000, and took from C and M a bond for £1812, payable on the 20th June, 1814, which was subsequently paid, and ten bond., for £100 each, payable according to the contract. It did not appear how the difference between £1812, and £2000, the hand money, had been paid. When the first bond became due, in 1815, G, the executor, presented it for payment, C then claimed to set off his account for building the house, and G told him to prove it, and postpone the set-off till the next bond should become due. In 1817, G sent two bonds due in 1816 and 1817, by E to C; C then claimed his set-off, E took the account, and put a receipt on the bond of 1817, for the money paid, and this account " which if accepted by G and W will be in full." Suit was brought by the executors on the bond of 1817, rejecting the set-off, to August term, 1818, in this suit C claimed his set-off. This suit in 1823 was reached for trial, when the attorney of the defendants not being ready to meet the demand, confessed judgment; at the time, or immediately after judgment was confessed, P, the attorney of the executors said there was another bond, which would fall due in 1824, and if C had a just account he would have an opportunity of making his defence on the other bond. P had not the bond of 1824 then in his possession, but he as attorney of the executors brought suit upon it to August term, 1824. *Held:* in that suit, that the account of C which was claimed as a set-off was barred by the statute of limitations.

The desire of one of the plaintiffs, in 1815, that the set-off should be postponed till the next bond became due in 1816, would at the utmost, suspend the statute, if at all, only for a year.

E, the plaintiff's agent, having no authority to allow the set-off made no promise which they were bound to disavow, and his act was therefore without consequences.

A *legal presumption* arose in the absence of proof of how the difference between the amount of the judgment bond for £1,812, and £2,000, the amount of the hand money had been paid, that the set-off of C had been settled in the payment of that sum.

ERROR to the Court of Common Pleas of Cumberland county,

In that Court it was an action of debt brought to August term, 1824, by the defendants in error against the plaintiffs in error, on a bond, dated *7th June*, 1814, given by the latter to the former, naming them executors of *Henry Brindle*, conditioned to pay £100 on the 20th *May*, 1824. The defendants pleaded payment with leave, and set-off, to which the plaintiffs replied *non solvit*, and

that the set-off was barred by the statute of limitations, on which issue was joined. The defendants claimed a set-off amounting to the sum of $161, of an account which *Crist,* one of them, had against *Brindle,* the testator, for building on his land in the summer of 1813, a small house, or office.

It was proved that *Crist* built the office for *Brindle,* and that afterwards, on the 9th *October,* 1813, they entered into articles of agreement for the sale of this land (on which it was built) by the latter, to the former, for £3000, £2000 to be paid about the middle of May then next, and £100 on the 20th May in every year until the whole purchase money should be paid. *Brindle* died in the spring of 1814, without having executed a deed for the land sold to *Crist,* but by his will he recited the contract, which had been made, and authorized his executors to carry it into effect. On the 7th *June,* 1814, these executors, the plaintiffs, executed a deed to *Crist, at the foot of which they signed a receipt for the consideration* £3000. The bond on which this suit was brought was one of the bonds which was given to secure the gales, or instalments of the purchase money, according to the article of agreement. It was shewn that *John Crist* and *Jacob M. Haldeman,* the defendants, had given a judgment bond of the same date with that in suit, (7th *June,* 1814,) to the plaintiffs, conditioned to pay £1812 on the 20th *June,* 1814, which had been entered of record, and paid, after execution was issued upon it. It was in proof that on the 20th *October,* 1814, *Crist* sold to *Haldeman* part of the land bought by him of *Brindle,* for £4,000, and some evidence was given to shew, that he had undertaken to pay the hand money to *Brindle,* but no other testimony was given as to the payment of the difference between the amount of the judgment bond £1812 and the hand money stipulated by the article £2000. *Brindle* died on the property, and his widow, the executrix continued to live there in 1815, when *Garner,* the executor, who lived in *Huntingdon* county, came to get the money due on the first bond. *Crist* then presented his account to *Garner,* who said, "he ought to prove it, and that he should postpone his off-set, till the next bond became due, as the executors then wanted money." *Garner* did not come to receive the amount of the second bond which fell due in 1816, but in 1817 he sent two bonds by one *Entriken,* who presented them for payment. *Crist* paid part of the amount in money, and claimed credit for his account: this *Entriken* said he had no authority to give, but he received the account from *Crist,* and made the following indorsement on the bond for £100 due the 20th *May,* 1817:

"6th June, 1817, received of *John Crist,* one hundred and five dollars and seven cents, in part of the bond, and *Mr. Crist's*

(Crist and Haldeman *v.* Brindle's executors.)

proven account for one hundred and sixty-one dollars and sixty cents, which he claims a credit on this bond for, which if accepted by *Garner* and *Brindle* will be in full."

"JAMES ENTRIKEN."

There was also indorsed on this bond "To *James Entriken,*" " *Mathias Garner.*"

To August term 1818, the plaintiffs brought suit against the defendants, to recover the amount of this bond, rejecting the credit of the proven account, and also the bond which fell due on the 22d of May, 1818. The defendants appeared to this suit, and put in a plea; and on the "18th *September*, 1823," (as appeared by the record) "the cause being ordered for trial, defendant not appearing, judgment is confessed by defendant's attorney according to the statement filed."

Mr. Ramsay, who was counsel of the defendants in this case, stated that the defendants claimed the set-off; but when the cause was ordered on, there was no witness then in court to substantiate it, when Mr. Parker, the counsel of the plaintiff, said, if you have a just defence, you can get it allowed on the last bond. Mr. Parker swore, that Mr. Ramsay said that *Crist* had told him of an account he had against *Brindle*, and asked if there were any more bonds due; that he told him he believed there was one, which would be due in 1824; (that he had not that bond in his hands at that time, nor until he brought the suit upon it;) that he then said, if *Crist* had an account, and it was a just one, he would have an opportunity of making his defence on the other bond; and that this conversation took place after judgment was confessed by Mr. Ramsay.

The counsel for the defendants requested the court to charge the jury—

1st. That if the jury believe, from the evidence, that *John Crist* in the life time of *Henry Brindle*, furnished lumber and materials to the said *Brindle*, to put up a house on the land of the said *Henry*, and that the said *Crist* put up a house for the said *Henry*, on the said land, and furnished to the said *Henry* articles of value for himself and family, in all amounting to the sum of $161 61, that then, and in that case, the said *Henry* became, and was liable to pay the said *John Crist* the full value of the said lumber, materials, work, labor, and articles.

2d. That if the jury believe, that afterwards, the said *Henry Brindle* entered into an article, to sell the said land to the said *Crist*, for the full value thereof, such articles of agreement would be no discharge of the liability of *Brindle* to pay said amount, and it would be a good set-off in this suit.

(Crist and Haldeman *v* Brindle's Executors.)

*3d.* That if the jury believe the facts in the two foregoing points, and that the bonds for the purchase money and hand money, were not excuted to *Brindle,* but his executors, that such execution of these bonds would not discharge the liability of the estate of *Brindle* to pay the said account to *John Crist.*

4th. That if the jury believe that *John Crist* presented the said account to the executor of the said *Brindle,* when he called on him to pay the first bond, and that the said executor then said he wanted the full amount of that bond, but that *Crist* should prove the said account, and that it should be a set-off to the next bond, or that *Crist* should postpone the set-off to the next bond, and get it proved, and that the said set-off was indorsed on the said bond, conditionally, on the 6th June, 1817, and that when that case came on to be tried in September, 1823, Mr. Parker, the attorney of the plaintiff, said, that if *Crist* could prove his set off, he should have it in the suit on the last bond—which is' the suit now trying. That if they believe these facts, then the said set-off is not barred by the statute of limitations, and the defendant, *John Crist,* is entitled to have it allowed in this suit.

The Court charged the jury

In the affirmative of the defendants' first and second points, and in the affirmative of the third point, "if the jury are satisfied that the set-off was not then made, and deducted, or was not made afterwards, when the bonds became due, and deducted when payment thereof was made. And in answer to the defendant's fourth point, the Court charged, that the facts as stated in this point, if proved, would prevent the statute of limitations from barring the right of defendants to their set-off. If, under such allegation, the plaintiffs derived any benefit, or the defendants suffered any disadvantages thereby."

"This presents one side of the controversy; there are a variety of facts on the other side worthy of your consideration.

*Crist,* it is said, obtained a stand upon the property for his board-yard in 1813, before he agreed to purchase. In the fall of the same year, on *9th October,* 1813, *Crist,* by articles of agreement, contracted to purchase the land for $8000. In the spring of 1814, £2000, or $5333, 33 hand money, was due and payable; for $4833 33 a judgment bond was given, entered up, and to August term, 1815, execution issued, and the money was collected. But this was not all the hand money—the judgment was for $4-833,33; the hand money was $5333 33—consequently $500 must have been paid in some other way. I know of no proof how *Mr. Crist* paid the sum of $500, the balance of the hand money; whether to *Henry Brindle,* in his life time, or his executors. Now

(Crist and Haldeman *v.* Brindle's Executors..)

if *Brindle,* or his executors, were indebted to *Crist,* for building this house, and some other items, to the amount of $161, and *Crist* was indebted to *Brindle's* executors in this sum of $500, and if there is no proof how this was settled, the presumption of law, under such circumstances, is, that in paying the $500, a credit would be taken on any sum due to the payor from the payee. When two men have mutual accounts and mutual claims upon each other, and a settlement or payment is alleged by one to the other, and there is no proof how or when, the law presumes the claims, on both sides, are settled.

There is another point of view in which the case presents itself:—suppose all the hand money was paid, and I think *Mr. Crist* says *Mr. Haldeman* advanced the money to pay part of the amount for which the judgment was taken; suppose the whole was paid—still there were bonds of £100, $266 67 due annually from the spring of 1815, inclusive, up to 1824, inclusive. Of these bonds three had been paid; a part of one to *Entriken,* and the balance of that bond and two others, in a suit to August term, 1818; deducting these three bonds from the ten bonds, leaves $1833. How was this paid? Was this all paid amicably, without suggesting the existence of this set-off? The proof is, that *Mr. Haldeman* paid a part—perhaps $4000. But if he paid this, he could not, under his purchase, have paid the hand money; and if he paid the hand money, he could not have paid this; for the two would be beyond the amount of his purchase.

We have said that the act of limitations would not bar the set-off under the facts, as stated by the defendant's counsel. The evidence, as it struck my mind, did not go so far. The mere incidental remark of Mr. Parker, attorney in the former cause, when he was not counsel, as he stated, at the time, in this; and was not in possession of the bond till long afterwards—I say the incidental expression of Mr. Parker, when the former cause was ordered on—Mr Ramsey not ready—having no evidence, and no client here, and judgment entered, having no cause to urge for a continuance—I say, an expression of Mr. Parker, that if there existed any good set-off, it could be made out of the remaining bond; such a declaration would not prevent the statute of limitation from barring the right to set-off. The receipt of *Entriken* contains no promise or acknowledgment, such as would revive a claim, barred by the statute of limitations. Supposing the allegation of the executor of *Brindle,* was such as to prevent, at that time, the operation of the statute of limitations, if six years after that elapsed, before the bond in question was due, or payable, and no admission or promise has been made since 1815 or '16, then the law would bar the right of the defendant to his set-off, and the plaintiff's claim would be left in full force, for the whole amount.

If *Mr. Ramsey*, as counsel for *Crist*, was put off his guard, was induced to assent to the judgment in the former suit, by the declaration of *Mr. Parker*, that the alleged set-off should be tried upon the next bond, (upon this bond) and the plaintiffs thereby obtained an advantage, the plaintiffs would be bound by such declaration; but the mere casual remark of the counsel of a party, in reference to some other matter of his client, in which he was not concerned as counsel, and not producing any advantage at the time, nor disadvantage to his adversary, is not such a promise as prevents the operation of the statute of limitations.

The suit was not brought until 1824, ten years after the claim of the defendant occurred; bonds becoming due year after year, defendants sued, judgments had, executions issued against them, c. and no defence till in this suit."

This charge was excepted to by the defendants, and a verdict being rendered in favor of the plaintiffs, the defendants brought this writ of error, to reverse the judgment entered upon it, and now assigned for error:

1st. The Court erred in the answer given to the fourth point, put by the defendant's counsel.

2d. In charging the jury that there was a presumption of law, under the circumstances stated by the court, that the set-off claimed by the defendant, had been paid or settled.

3d. In charging the jury, that where two men have mutual accounts and mutual claims upon each other, and a settlement or payment is alleged by one to the other, and there is no proof how or when, the law presumes that the claims on both sides are settled.

4th. In charging the jury, that the defendant's set off, under the circumstances, was barred by the statute of limitations.

5th. In charging the jury, that the receipt of *Entrikin* contains no promise or acknowledgment, such as would revive a claim barred by the statute. Supposing the allegation of the executor of *Brindle*, in 1815, was such as to prevent, at that time, the operations of the statute of limitations—if six years after that elapsed, before the bond now in question was due or payable, and no admission or promise has been made since 1815 or '16, then the law would be left in full force, to its whole amount.

*Penrose* for the plaintiff in error.

1. The Court erred in charging the jury that a *legal presumption* arose, that the set-off, claimed by the defendants, had been settled and paid, either in the difference between £2000, the hand money, and the sum of £1812, a part of the hand money, for which a bond had been taken by the defendants; or in the pay-

(Crist and Haldeman *v.* Brindle's executors.)

ment of the bonds which fell due, annually, from 1815 to 1824 inclusive.

1st. There was no presumption of such settlement or payment from the facts of the case; which, if properly understood, repelled such presumption.

2d. If the evidence justified any presumption of payment, it was a presumption of fact, to be weighed by the jury, and not a presumption of law, binding and conclusive upon them.

1st. The facts proved did not warrant such presumption, but repelled it.

It will be recollected that *Brindle* died in the spring of 1814, without having executed the contract, contained in the articles of agreement, for the sale of the land; entered into on the 9th *October*, 1813, between himself and *Crist*, and that in his will, which is dated on the 15th *December*, 1813, he recited that he had "lately made an agreement to sell to *John Crist* his *present dwelling* plantation," and authorized his executors to "make a lawful conveyance for the same." These executors, and one of them his widow, and, of course, well acquainted with his business, on the 7th of *June*, 1814, in pursuance of the power given them by the will, executed a deed to *Crist* for the land, putting at the foot of it a receipt in full for the purchase money, and took from *Crist* his bonds on account of the purchase money. One of them for £1812, payable on the 20th June, 1814, and the rest for £100 each, payable annually, from 1815 to 1824 inclusive. The hand money was £2000; the bond taken for part of the hand money, was but for £1812, and the Court charged the jury that there was a *legal presumption* that *Crist's* account against *Brindle*, which was due in the summer of 1813, was settled, and paid in the difference between these two sums. The evidence warrants the assertion, either that the difference was paid to *Brindle*, in his life time, or to the executors after his death.

But these executors gave a receipt in full for the *whole* purchase money; which would make them liable *prima facie* for the whole amount. Then, as this was the case, if the difference were paid to *Brindle*, they must, at the time they executed this deed and receipt, have been informed precisely how the difference was paid, and had some evidence to guard themselves against the responsibility created by the receipt for the whole purchase money on the deed. If then the claim of *Crist* had been settled with *Brindle*, in his life time, and this was the reason they took the bond for less than £2000, the hand money, it is manifest, not only that the executors had evidence of this claim put into their possession, at that time, but at all events that they were then informed of the fact, that this claim had been settled and paid, if such were the fact. If that difference were paid to the executors themselves, it is plain

33

that if *Crist's* account had been paid or settled in it, they knew the fact *when* the deed and bond for the balance of the hand money were given. A little attention to dates will show the error into which the Court fell.   It will be recollected, that this deed and these bonds were executed on the 7th of *June*, 1814; *then* the Court said a legal presumption arose, that the claim of the defendants was settled and paid; but in one year after, in 1815, *Garner*, one of these very executors, who executed this deed, and received these bonds, and who it is shown must have known the fact, if this claim had been settled and paid, presented for payment one of the bonds, given on the day when all these bonds were given, and then *Crist* demanded a credit for his account, and *Garner recognized* it, told him to prove it, and postpone his set off till the next bond become due.   Certain it is, that *Garner* would not, in 1815, admit this claim against the estate which he represented, if he had settled and paid it the year before, when he took the bond for the hand money, or if, at that time, he had been informed that it had been settled and paid by *Brindle*, in his life time.

The argument, by a reference to these dates and circumstances, on this point is conclusive.   The Court were equally unfortunate in suggesting that there was a presumption, that if this claim had not been settled and paid in the hand money, it had in the payment of the bonds which fell due annually from 1815 to 1824.

These bonds were given to the executors themselves, who were compelled to account to the estate which they represented for the amount.   If, instead of receiving money for any one of these bonds, the executors had taken from *Crist* his proven account against the estate, most assuredly they would have required, that he should give them the account with the receipt upon it, as a voucher, which they would have carefully preserved, to exonerate them from their liability to account for the full amount of the bond.

But again.—When the bond of 1815, the first bond for an annual instalment fell due, it was presented by *Garner*, and paid in full; for *Garner* then *requested Crist* to postpone the set-off till the next bond become due.   *Garner* resided at a distance, and did not come in 1816 to obtain payment of the next bond, but he waited until 1817, and then he sent the bonds of 1816 and 1817 by *Entriken*, who indorsed on the bond of 1817 a receipt for this very account, "which, if accepted by the executors, was to be in full.

The executors, rejecting the credit, brought suit on this bond of 1817, and that of 1818, to August term, 1818; and *Crist* appeared to that suit and claimed this set-off there; and it was not until the 18th *September*, 1823, when judgment went against him

(Crist and Haldeman *v.* Brindle's Executors.)

in that suit, that his set-off was thrown off the bond of 1817, where, up to that time, he had been insisting it was properly placed; and at that time it was proved by the counsel of the plaintiff himself, there was but one bond, that of 1824, now in suit, outstanding and unpaid.

It is plain then it was not paid in the bond of 1815, 1816, 1817 and 1818, as all these bonds are accounted for, and it was not paid in any of the subsequent bonds, as it was in suit on the bond of 1817, until all the other bonds were paid, except the bond of 1824, which is now in suit.

The facts then repel all presumption of payment; and the next inquiry is, whether the Court did not err in charging the jury, that a *legal presumption* of payment arose in such a case.

2d. If the evidence authorizes any presumption at all, it was a presumption of fact, to be weighed by the jury, and not a presumption of law, binding and conclusive upon them.

A *legal presumption* is a binding presumption; one which leaves no discretion to the jury, but is absolutely controlling upon them, as a flat legal bar. *Miller* v. *Schlosser*, executors, 3 *Serg. & Rawle*, 490. Such is the presumption of death, from the absence of an individual, for a given period.

The enjoyment of water, in any particular way, for a certain period, affords conclusive presumption of right in the party so enjoying it. *Strickler* v. *Todd*, 10 *Serg. & Rawle*, 69.

So what circumstances will justify the presumption of a deed is matter of law, and it is the duty of the Court to give an opinion, whether the facts proved will justify the presumption. *Stoever* v. *Whitman*, 6 *Bin.* 416.

Where too the *legal presumption of payment* arises, the Court ought not to submit the question to the jury, as open for their belief, as to the actual payment. *Henderson* v. *Lewis*, 9 *Serg. & Rawle*, 379—*Cope* v. *Humphreys*, 14 *Serg. & Rawle*, 15. Such presumption of law is as much a flat bar, as the statute of limitations.

To charge the jury then, in a case where the facts repelled all presumption, that a legal presumption of payment arose, was, to say the least of it, to lead them to suppose that material points, which were matters of fact, were matters of law, which they had no right to consider. And this is error. *Work et al.* v. *M'Clay*, 2 *Serg. & Rawle*, 415. *Hershey* v. *Hershey*, 8 *Serg. & Rawle*, 333.

As to the statute of limitations, he contended, that the court erred in applying it to this case. That although the declaration of the executor, *Garner*, in 1815, as to the postponement of the set-off, the conditional receipt of *Entriken*, on the bond of 1817, and the remark made by Mr. Parker, on the confession of judgment

(Crist and Haldeman *v.* Brindle's Executors.)

in 1823, taken separately, might not avoid the bar of the statute, yet, when considered together, these circumstances did avoid it.

*Garner's* request to postpone the set-off till the next bond came due in 1816, suspended the operation of the statute until that time. His not presenting that bond himself, but employing another to do it, in 1817, was a fraud on his part, which the defendant did not then discover, as the person employed did receive the account, and indorse on the bond of 1817 a conditional credit. To avoid the operation of this, he should have disavowed it, and given notice of his disavowal to *Crist*. *Breden* v. *Dubarry*, 14 *Serg. & Rawle*, 47.

The executors sued the bond of 1817 to August term, 1818. If this be considered as a notice that they disaffirmed the act of *Entriken*, and determined not to adhere to the promise of *Garner*, it was then only that *Crist* had notice of the fraud of *Garner*, in not allowing the credit which he claimed. And no principle is better established than that where there is fraud, the statute will not be allowed to run to protect the party who commits it, but from the time the fraud is discovered. *Jones* v. *Conway*, 4 *Yeates*, 109. This throws out of the computation all the period up to the year 1818, and from that time up to 1824, when suit was brought, six years had not elapsed.

Again, where the right to sue is suspended, the statute of limitations does not run. *Dougherty* v. *Snyder*, 15 *Serg. & Rawle*, 84. Now, when the executors brought suit on the bond of 1817, *Crist* appeared to that suit, and there insisted upon his set-off, until the executors fraudulently threw it out. It was then *in suit* up to 1823, when this occurred. This, taken with the other circumstances, would avoid the statute of limitations. This view derives force from the manner in which it was thrown out by the counsel of the executors.

Besides, he suggested that the statute should not be applied to a case like this, when there are mutual demands among the parties, and one has the advantage of having his demand evidenced in such a way, that the statute cannot affect it. To permit the statute to bar the claim of the other, will be to promote fraud.

*Carothers* for the defendant in error

Argued that if there had been any settlement with the executors, by which they would be informed of the facts in reference to this claim, it should have been proved by the defendants. As the plaintiffs rested their claim upon a bond, which was not disputed, the *onus* of the defence was upon the defendants, who were bound to make out every fact, upon which they relied, affirmatively. When the Court charged the jury that a legal presumption of payment arose, they did not take the facts from the jury, but only instructed them, that in law, they had the right

(Crist and Haldeman *v.* Brindle's Executors.)

to make the inference of payment from the facts proved. The Court gave one view of the facts, and instructed the jury that in that view they were favourable to the defendants, but they also presented another view which was decidedly against the defendants, leaving it to the jury to select the view which might be most consonant to the testimony. In this latter view, the fact that $500 of the hand money was paid, and that the defendants had not shown how, and the fact that so many bonds were paid, in the absence of other proof, certainly justified, in law, the presumption that the cross demand of the defendants had been settled and paid.

The statute of limitations was enacted to guard against the loss of papers, and other evidence of the payment of debts, and is most appropriately applied to such a case as this; where executors should not be required to preserve papers, and the evidence of payment for an indefinite time. The burden of proof did lay upon the defendants. The evidence to avoid the bar was strongly put by the Court to the jury, and it was not error to present to the jury the evidence which the plaintiffs relied on to sustain it.

The declaration of *Garner* that the set-off should be postponed until 1816, made it due at that time, and the lapse of six years after that time barred the claim.

And besides this, when in 1818, suit was brought on the bond of 1817, the executors, by that suit, gave the defendants notice that they would not allow this claim. And it was incumbent on them to bring suit on it, to preserve it from the statute, which they might have done, or to attend to it, that it might be tried in that suit. The mere incidental remark of *Mr. Parker* was properly put to the jury, as in no way affecting the rights of the plaintiffs.

The opinion of the Court was delivered by

GIBSON, C. J.—The account which is the subject of cross demand, was presented to the plaintiffs in 1815, who desired it to be postponed till the next bond should become due, in 1816, and to be proven in the mean time. This would, at the utmost, suspend the statute, if at all, only for a year; which would still leave too great an interval. In 1817 it was again presented, but to the plaintiff's agent, who, having no authority to allow it, barely promised to submit it to the plaintiffs. He made no promise which they were bound to disavow, and his act is therefore without consequences. Lastly in 1823, when an action on one of the bonds was ordered for trial, under circumstances that put the defendants at the plaintiffs' mercy, *Mr. Parker*, their attorney, replied to a suggestion of set-off from the other side, that there

would be an opportunity to set it off against the succeeding bond. As to this, it seems to me, the Court put the point on the true ground. Nothing like trick or imposition is pretended; and granting that *Mr. Parker's* clients would have been bound by his agreement if made on sufficient consideration, yet his suggestion neither benefitted them, nor prejudiced the defendants who have not been induced by it, to forego any advantage of which they might have availed themselves. A promise to pay a debt barred by the statute, is sufficient to revive it, because it rests on a moral obligation; but the debtor's attorney has no authority to bind himself by such a promise, because it is not within the scope of his business. Beside, there was no promise but to afford an opportunity to give the benefit of the set-off for whatever it should be worth: certainly not to waive the bar of the statute which was then complete.

The remaining point is quite as simple. By the terms of the original contract, the defendants were to pay a sum in hand, for part of which they subsequently gave a bond and warrant, which has been entered up and the money collected. How the difference was paid, does not appear; and as the set-off was then an existing demand, the jury were directed that a *legal* presumption arose of its having been settled in that transaction. The defendants object that it ought to have been left to the jury as mere presumptive evidence of the fact. But was it not so left? *Mr. Starkie*, who has treated the subject of presumptions in a masterly manner, (part iv. 1235,) divides them into LEGAL, or such as derive from the law, an artificial effect, beyond their ordinary tendency to produce belief; and NATURAL, or such as act only by their proper efficacy. The Court here put the presumption to the jury, as of the first class. But legal presumptions are again divided into such as are *immediate*, or conclusions which the law itself makes without the aid of a jury; and *mediate*, or such as the law makes, *but through the medium of a jury*. Of the last kind is the presumption of payment from the lapse of twenty years, which is only *evidence* of the fact, but evidence from which, when not rebutted, the jury is *bound* to draw a conclusion which cannot be drawn from it by the Court, when presented as a circumstance specially found, or pleaded. *Starkie, p.* iv. 1240. All presumptions which are attended with peculiar consequences, are of this sort, and the instances of them given in all the books, approach pretty near to the case at bar. Such is the presumption in the case of rent, from a receipt for rent subsequently due. The presumption of payment may arise, also, from the particular habit and course of dealing between the parties; and it ought equally to arise from the habitual course of transactions among all men, in which it is extremely unusual for creditors to pay money to

(Crist and Haldeman *v.* Brindle's executors.)

their debtors. The presumption, here, was therefore not merely a natural one: it was attended with the peculiar consequence of casting the burden of proof on the other side, and was in the words of the Court, a legal presumption.

Judgment affirmed.